**WO** BL

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Allan S. MacDonald,<br>Plaintiff,<br>vs.<br>Maricopa County, et al.,<br>Defendants. | No. CV 03-0374-PHX-SMM (VAM)<br>No. CV 03-1584-PHX-SMM (VAM)<br><br>**MEMORANDUM OF DECISION AND ORDER** |

Plaintiff Allan S. MacDonald filed two *pro se* civil rights actions alleging deliberate indifference to his medical needs pursuant to 42 U.S.C. § 1983, which this Court consolidated (Case. No. 03-374, Docs. # 129, 143, Case No. 03-1584-PHX-SMM (VAM), Docs. ##1, 63).[1] Now pending before this Court is Defendants' Motion for Summary Judgment, and various motions filed by Plaintiff (Docs. ##128, 230, 231). This Court will grant summary judgment in part and deny it in part. Finally, Plaintiff's motions will be denied.

## I. Procedural History

In Case No. 03-0374-PHX-SMM (VAM), Plaintiff is litigating an action against 30 defendants in which he alleges deliberate indifference to his medical needs and medical malpractice (Doc. #129). First, Plaintiff alleges that Defendants (1) Maricopa County; (2) Maricopa County Board of Supervisors Board Members Max Wilson, Fulton Brock, Don Stapley, Andrew Kunasek, and Mary Wilcox; (3) Maricopa County Manager David Smith,

[1] Unless otherwise indicated, document citations refer to documents contained in Case No. 03-0374-PHX-SMM (VAM).

and Deputy County Manager Sandi Wilson; (4) Sheriff Joseph M. Arpaio, Chief Deputy David Hendershott, Chief of Custody Jerry Sheridan, and Jail Commander Tracy R. Haggard, of the Maricopa County Sheriff's Office; and (5) Correctional Health Services (CHS) adopted a policy, custom, or practice of consistently failing to approve, request, allocate, or distribute funding and provide medical personnel for Maricopa County jails (Id. at 4).

Second, Plaintiff alleges that Defendants Dr. Jonathan Weisbuch, Dr. Joseph D. Scalzo, Dr. Gail Steinhauser, Dr. Victor Gan, Physician Assistant Clair E. Thompson, Trista Campbell, Stephanie Gallardo, Diane Butler, Lechtie Fream, Pamela Brooks, Pinnkey Smith, Donald J. Chaffee, and Christine Malta failed to provide for his specific medical needs (Doc. #129). In particular, Plaintiff asserts that when he was arrested and taken to the intake area, an initial screening was conducted at which time he told medical assistants Chaffee and Malta that he had end stage liver disease, took medication for Esophegeal Varices,[2] had a large and painful tumor on his forehead, and had a torn Anterior Cruciate Ligament in his left knee (Id. at 4(F) - 4(G)). Neither Defendant wrote this information down or referred Plaintiff to a nurse, resulting in a delay of medical treatment (Id. at 4(G)). Plaintiff further alleges that Defendant Nurses Fream and Butler failed to properly supervise Chaffee and Malta (Id. at 4(H)). Thereafter, Plaintiff allegedly informed Defendant Nurses Smith and Brooks of his need for medication and treatment, but did not receive any assistance from December 14, 2002 until January 31, 2003 (Id. at 4(I)).

Defendant Thompson examined Plaintiff on January 31 (Doc. #129 at 4(I)). Plaintiff informed Thompson that he suffered from Hepatitis C, had stage 3-4 liver Cirrhosis, and was taking medication, but Thompson allegedly did not attempt to refer Plaintiff to a liver specialist, treat Plaintiff's pain, or start Plaintiff on Interferon/Ribavirin for Hepatitis C (Id.). Plaintiff maintains that Defendant Dr. Steinhauser is liable for his injuries because she was Thompson's supervising physician, and was informed of Plaintiff's condition but did not

---

[2] A complication of portal hypertension is esophageal varices, which can result in the death of a patient if the varice ruptures (Doc. #210, ex. Q).

independently act to treat him (Id. at 4(J)). Plaintiff asserts that he saw Defendant Dr. Gan in March 2003, who also did not refer Plaintiff to a liver specialist or attempt to provide Plaintiff antiviral treatment (Id.).

Third, Plaintiff alleges that Defendant Detention Officers A.R. Allyn, Manuel Saldivar, and Dallas D. Uphold violated his constitutional rights by failing to provide him a lower bunk, lower tier housing assignment, and pain medication, and refer him to medical personnel in a timely manner (Doc. #129 at 4(K)).

Fourth, Plaintiff alleges that Defendants Scalzo, Steinhauser, Gan, Thompson, Gallardo, Brooks, Smith, Chaffee, and Malta committed state medical malpractice (Id. at 5).

Finally, in a claim that was brought into this case[3] when the Court consolidated case no. 03-1584-PHX-SMM (VAM) with case number 03-374-PHX-SMM (VAM) (see Doc. #63), Plaintiff alleges that Defendants Arpaio, Haggard, CHS, Scalzo, Steinhauser, Gan, Thompson, Gallardo, and Dr. Jose Urdaneta were deliberately indifferent to his medical needs because when he was transferred to ADOC custody his medical records were not transferred.

Before the cases were consolidated, Defendants moved for summary judgment arguing, (1) the claims against Defendants named for the first time in the Third Amended Complaint were time-barred; (2) Defendants were not deliberately indifferent to a serious medical need; and (3) Plaintiff has not provided expert medical opinions regarding the standard of care, causation or damages such that he can survive summary judgment on his state claim of medical malpractice (Doc. #128). In support, Defendants filed various affidavits and medical documentation (Id.).

Plaintiff responded that (1) the new Defendants were aware of the action within the requisite limitations period; (2) Defendants were deliberately indifferent to his medical

[3] When this Court consolidated the cases, and ordered that the parties proceed in accordance with the Third Amended Complaint in Case No. 03-0374-PHX-SMM (VAM). However, the sole claim in Case No. 03-1584-PHX-SMM (VAM) was read in to the operative Third Amended Complaint.

needs; (3) the jail system was improperly funded; and (4) he is seeking an expert affidavit to support his state medical malpractice action (Docs. #209, 230). Plaintiff filed various attachments and affidavits (Id.).

**II. Rule 15(c) of the Federal Rules of Civil Procedure**

Additional defendants may be brought into an action, and the Complaint may relate back to the original Complaint, if the new defendants have received sufficient notice of the action, will not be prejudiced, and knew or should have known that but for the mistaken identification they would have been named in the original action. Fed.R.Civ. P. 15(c). Defendants argue that those Defendants named for the first time in the Third Amended Complaint – Defendants Hendershott, Sheridan, Weisbuch, Daley, Campbell, Max Wilson, Brock, Stapley, Kunasek, Wilcox, David Smith, Sandie Wilson, Fream, Butler, and Maricopa County – should be dismissed because the claims are barred by the requisite limitations period as to them (Doc. #128).

Plaintiff named the Maricopa County Board of Supervisors in his original Complaint, and named various members of the Board and various medical personnel in his Second Amended Complaint (Docs. ##1, 29). Additionally, this Court has already concluded that, with respect to Maricopa County, "there can be little doubt that adequate notice has been provided to avoid prejudice" (Doc. #125). Defendants present no evidence that the action does not relate back to the original Complaint because the new Defendants have been prejudiced or lacked sufficient notice of the pending action. Defendants present no affidavits or other documentary evidence to support a conclusion that any of the "new Defendants" were not aware of the action, would be prejudiced by their inclusion, and did not know that but for Plaintiff's mistake regarding their identity they would have been named in the original action. Accordingly, based on the evidence currently before this Court, the "new Defendants" are not entitled to a dismissal.

**III. Deliberate Indifference to Medical Needs**

**A. Medical Evidence**

Based on the evidence before this Court, when an inmate enters Madison Street Intake, a Medical Assistant documents the inmate's medical history (Doc. #128, ex. 3). The assistant sits across from the inmate, separated by plexiglass (Id.). The assistant and inmate speak via an intercom system, and the inmate is in a separate partitioned area to ensure privacy (Id.). The assistant notifies the R.N. on duty if the inmate has certain diseases, including Hepatitis C *only if* the inmate is on medication or shows clinical symptoms (Id.). The R.N. ensures that the medication is continued as needed, and if the inmate does not remember the name of the medication, the nurse will attempt to obtain that information (Id.).

Plaintiff was incarcerated in the Maricopa County jail system from December 14, 2002 until June 30, 2003 (Doc. #128, ex. 1). At that time, Plaintiff had Hepatitis C, mild Cirrhosis of the liver, orthopedic problems in his left knee, and a benign facial lipoma (Id. ex. 2, Doc. #210, ex. K). Prior to his current incarceration, Plaintiff was imprisoned from 1997 until March 2000, and had stable liver enzymes (Doc. #128, ex. 2). When Plaintiff was returned to the Maricopa County jail system on December 14, 2002, his baseline liver enzyme test indicated four times what the levels had been in March 2000; however, within six weeks his values had significantly improved, decreasing by half (Id.).

A Maricopa County CHS Receiving form was completed for Plaintiff on December 15, 2002 (Doc. #128, ex. 3). Plaintiff informed Chaffee, a medical assistant, that he suffered from Hepatitis C and required a special diet (Id.). A Health Appraisal completed by Malta also indicated that Plaintiff had Hepatitis C and suffered from "gall liver stone" (Id., ex. 4). It is disputed whether Plaintiff informed Chaffee or Malta that he was taking medications; however, it is undisputed that Plaintiff did not give either Defendant the name of the medication he was taking (Id., ex. 3; Doc. #210, ex. A). Plaintiff did not immediately undergo a physical examination (Doc. #128, ex. 15).

On December 16, 2002, Plaintiff told Defendant Smith that he took medication, and had knee problems and a facial tumor (Doc. #210, ex. A). However, Plaintiff did not receive

any medication for the first 48 days of imprisonment, and began throwing up blood (Id.). Plaintiff also fell from the top bunk on December 23, 2002, and told Smith about the fall the next day (Id.). As a result of the fall, Plaintiff's leg was black and blue, and he could not walk (Id.). Defendant Brook noticed the bruise, and asked Plaintiff what happened (Id.). However, neither Smith nor Brook did anything to rectify the situation (Id.). Moreover, the detention officers refused to provide Plaintiff Inmate Medical Request forms or give him a bottom bunk, despite the obvious leg injury and his difficulty getting around (Id.).

Plaintiff gave Defendant Smith Inmate Medical Request forms on December 16, 23, and 27, and January 3, and 15 (Doc. #210, exs. A, T). These requests were never forwarded to medical; the first Medical Request form received by the infirmary was dated January 31, 2003 (Doc. #128, ex. 6, 13, 15; Doc. #210, ex. T). Defendant Thompson conducted Plaintiff's physical exam on January 31, 2003, and indicated that he suffered from hypertension, heart disease, liver disease with a history of Hepatitis C, numbness and weakness in his lower extremity, and left knee pain (Doc. #128, ex. 2, 5). Defendant Thompson scheduled a follow-up in three months, and a Special Needs Treatment Plan for, *inter alia*, bottom bunk, cane, on-site surgery, transport long distances in a wheelchair, elevator use, and left knee brace (Id.). Defendant Thompson also ordered laboratory work, to include P11 (order for chemistry panel), CBC (complete blood count), and Lipid Profile, and prescribed Inderol for portal hypertension (Id.).

On February 8, 2003, Plaintiff was moved to a lower tier, lower bunk housing assignment (Doc. #128, ex. 1). On February 20, physician orders were written for out-patient surgery for cyst removal from the right side of Plaintiff's forehead (Id., ex. 2, 5). Eight days later, Plaintiff was scheduled for hematology service for a possible repeat biopsy because his last biopsy, done in October 1998, was suboptimal (Id., ex. 2). Plaintiff was transferred to the Arizona Department of Corrections (ADOC) before that appointment (Id.). Plaintiff also had pain in his knee, and an orthopedic appointment was pending (Doc. #210, ex. Q).

On March 17, 2003, Dr. Gan ordered extra blankets for Plaintiff (Doc. #128, ex. 2, 5). On April 10, 2003, Dr. Gan ordered an on-site Code I surgery to be scheduled in two weeks

for the surgical removal of a facial lipoma (Id.). Six days later, Plaintiff underwent surgery to remove a lesion on his forehead (Doc. #210, ex. Q). The following day, Inderol was discontinued (Doc. #128, ex. 2, 5). Plaintiff was also given bacitracin ointment, and an appointment with Dr. Gan was scheduled for the next week (Id.). On May 22, 2003, Defendant Thompson wrote for a Code I consult with the Maricopa Medical Center Orthopedic Clinic and checked on rescheduling an MRI (Id.). On June 25, 2003, Plaintiff was again prescribed Inderol (Doc. #210, ex. Q).

While in ADOC, Plaintiff underwent a liver biopsy (Doc. #210, ex. A). Plaintiff's biopsy showed "grade I to II activity and stage III to IV changes consistent with Cirrhosis. His last blood work includes an ALT which was 149 and ammonia level 153" (Id.). Plaintiff was diagnosed with Hepatitis C with likely cirrhosis, and a history of likely varices (Id.). It was noted that he did not qualify for anti-hepatitis C medications due to the cirrhosis and varices (Id.).

**B. Applicable Law and Analysis.**

"Under Rule 56(c), summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Id. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Id. at 248.

**C. Deliberate Indifference Claim**

"[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). "To demonstrate that a prison official was deliberately indifferent to an inmate's serious . . . health needs, the prisoner must show that 'the official [knew] of and disregard[ed] an excessive risk to inmate health.'" Austin v. Terhune, 367 F.3d 1167, 1172 (9th Cir. 2004) (citing Farmer v. Brennan, 511 U.S. 825, 838 (1994)). "Further, the deliberate indifference must be both 'purposeful,' and 'substantial' in nature." Ruvalcaba v. City of Los Angeles, 167 F.3d 514, 525 (9th Cir. 1999) (internal citations omitted). "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they 'deny, delay, or intentionally interfere with medical treatment. . . . Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights.'" Lopez v. Smith, 203 F.3d 1122, 1132 (9th Cir. 2000) (citations omitted).

With respect to the claim of deliberate indifference, the relevant issues in this action are as follows:

(1) Between December 14, 2002, and Plaintiff's medical examination on January 31, 2003, were Defendants Chaffee, Malta, Smith, Brooks, Allyn, Saldivar, and Uphold aware of his medical conditions (i.e., his request for medication and his injured left knee), and, if so, did they deliberately refuse to provide him assistance or refer him to the proper medical personnel, resulting in a delay in treatment?

(2) After January 31, 2003, were the proper medical personnel Defendants aware of Plaintiff's medical conditions of Hepatitis C, Cirrhosis, and facial lipoma, and, if so, did they deliberately fail to provide adequate medical treatment?

(3) Did Defendants Allyn, Saldivar, and Uphold refuse to promptly provide Plaintiff a lower bunk even after a medical slip was issued, and, if so, did they do so with deliberate indifference to Plaintiff's medical needs?

(4) Was Plaintiff subjected to deliberate indifference to his medical needs due to the lack of proper funding and resources?

(5) Did Defendants fail to transfer Plaintiff's medical records to ADOC when he transferred there from the jail, and, if so, did they do so with deliberate indifference to Plaintiff's medical needs?

**1. Medical Care Prior to January 31, 2003**

First, Plaintiff argues that between the time he was placed in jail, December 14, 2002, and his physical examination on January 31, 2003, Defendants Chaffee, Malta, P. Smith, Brooks, Allyn, Saldivar, and Uphold were aware of his medical conditions and did not refer him to the proper medical personnel.

According to the evidence presented, there is a disputed issue of fact as to whether Chaffee, Malta, Brooks, and P. Smith were informed that Plaintiff was taking prescription medication. Chaffee, Malta, Brooks, and P. Smith do not recall being informed by Plaintiff that he was taking medication, but Plaintiff attested that he informed Defendants that he was prescribed medication and as a result of not taking the medication in the past he experienced bleeding. The undisputed evidence is that Chaffee, Malta, Brooks, and P. Smith did not refer Plaintiff to a nurse. In addition, Plaintiff attested that he submitted five Medical Request Forms to Smith, at least two of which specifically referred to needing medication, that were never forwarded to the proper medical personnel. (Doc. #210, exs. A, T). Because Plaintiff avers that he specifically told the Defendants he would suffer bleeding without his medication, there is a disputed issue of material fact as to whether Chaffee, Malta, Brooks, and P. Smith were aware that Plaintiff suffered from a serious medical need which they deliberately disregarded, resulting in a delay of medical attention that caused Plaintiff to throw up blood. See Ruvalcaba, 167 F.3d at 525 ("Further, the deliberate indifference must be both 'purposeful,' and 'substantial' in nature.'"). Thus, Defendants' request for summary judgment on this aspect (i.e., request for medication) of Plaintiff's deliberate indifference claim is denied as to each of these four Defendants.

Second, there is a disputed issue of fact as to whether Smith and Brooks were aware that Plaintiff had fallen from the top bunk and severely injured his left knee, resulting in bruising and the inability to walk. (Id.). Plaintiff attested that both Smith and Brooks

observed his injured knee, and his inability to walk. Thus, there is a disputed issue of material fact as to whether Smith and Brooks were aware that Plaintiff suffered from a serious medical need (i.e., a severely injured left knee) which they deliberately disregarded, resulting in a delay of medical attention that caused Plaintiff to suffer great pain.

Third, there is a material issue of fact as to whether Defendants Allyn, Saldivar, and Uphold were deliberately indifferent to Plaintiff's medical needs.[4] Plaintiff attests that he requested Medical Request Forms from Defendants Allyn, Saldivar, and Uphold, and was refused. (Doc. #210, ex. A). Plaintiff further attests that these Defendants observed bruising on his leg and his inability to walk, but did not alert medical personnel. (Id.). Defendants Allyn, Saldivar, and Uphold failed to submit any evidence denying that they refused Plaintiff medical forms, that they did not observe the bruising on his leg and his inability to walk, or that they did alert medical personnel to his problems. (Doc. #128, exs. 10-12). Accordingly, based on the record before this Court, there is a disputed issue of material fact as to whether Defendants Allyn, Saldivar, and Uphold were aware that Plaintiff had serious medical needs, which they deliberately disregarded, resulting in a delay of treatment.

As outlined above, Defendants Chaffee, Malta, Smith, Brooks, Allyn, Saldivar, and Uphold are not entitled to summary judgment on Plaintiff's claim that he was denied necessary medical treatment from December 14, 2002, until January 31, 2003.

However, these Defendants' supervisors, Fream and Butler, and Maricopa County are entitled to summary judgment. A supervisor, in his individual capacity, "is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Further, under Monell v. New York City Dept. of Social Serv., 436 U.S. 658, 691 n. 55 (1978), "[m]unicipalities cannot be held liable under a

---

[4] Defendant Haggard attested that by statute, Maricopa County, not the Maricopa County Sheriff's Office or those employed by the Office, are responsible for all inmate medical care (Doc. #128, ex. 8). Although detention officers may not be responsible for the actual medical care provided, they are still responsible for passing out Medical Request Forms and alerting medical personnel if an inmate is in need of medical attention. (Doc. #128, exs. 13, 14.)

traditional *respondeat superior* theory. Rather, they may be held liable only when 'action pursuant to official municipal policy of some nature caused a constitutional tort.'" Haugen v. Brosseau, 351 F.3d 372, 393 (9th Cir. 2003). According to Plaintiff's own allegations and evidence, Defendants Chaffee, Malta, Smith, and Brooks did not report Plaintiff's medical needs to their superiors. Thus, the only theory of recovery as to Fream, Butler, and Maricopa County is *respondeat superior*, which is insufficient to support a § 1983 action. See Hydrick v. Hunter, 449 F.3d 978 (9th Cir. 2006) (there is no pure *respondeat superior* liability in a § 1983 action, but a supervisor is liable for the constitutional violations of subordinates if he participated in or knew of the violations).

**2. Medical Care After January 31, 2003**

**a. Hepatitis C/Liver Cirrhosis**

Plaintiff alleges that the medical care he received in regards to his Hepatitis C and Cirrhosis represents deliberate indifference to his medical needs. However, the record demonstrates otherwise. Once Plaintiff's medical condition was reported to the proper medical personnel, Plaintiff was properly and timely treated for Hepatitis C and Cirrhosis of the liver.

On January 31, Plaintiff was given a physical examination, which demonstrated that he suffered from hypertension, heart disease, Hepatitis C, numbness and weakness in his lower extremity, and left knee pain (Doc. #128, ex. 2, 5). Defendant Thompson scheduled a follow-up in three months, and ordered Plaintiff to be placed in a bottom bunk, provided a cane, sent for on-site surgery, transported long distances in a wheelchair, allowed to use an elevator, and provided a left knee brace (Id.). Defendant Thompson also ordered laboratory work (Id., ex. 2). On February 28, 2003, Plaintiff was scheduled to the hematology service for possible repeat biopsy, but was transferred to the ADOC before his appointment (Id.).

On April 16, 2003, Inderol was discontinued, Plaintiff was scheduled an appointment with Dr. Gan, and Plaintiff's chest x-ray was checked (Doc. #128, ex. 2, 5; #210, ex. Q). Defendant Thompson saw Plaintiff on May 22, 2003, and on June 25, 2003, Plaintiff was again prescribed Inderol (Id.).

The record demonstrates that Plaintiff was seen by medical personnel on a regular basis. Further, Plaintiff's liver enzymes, which had greatly deteriorated when he was first released from imprisonment, significantly improved while he was housed in Maricopa County jail (Doc. #128, ex. 2). Although Plaintiff underwent a biopsy after leaving Maricopa County jail, his enzyme levels had not significantly worsened (Doc. #210, ex. A). Additionally, it was noted that because he had cirrhosis and varices, he did not qualify for anti-hepatitis C medications (Id.). Notably Plaintiff showed signs of cirrhosis in 1998, prior to the instant incarceration (Id., ex. R).

In sum, based on the evidence in the record, Plaintiff was provided proper and timely medical treatment after January 31, 2003; the care was appropriate and met all applicable medical standards of care. See Doc. #128, ex. 2. According to Dr. Gan's affidavit, Plaintiff was not a candidate for Interferon because he would not be in the Maricopa County jail system for a sufficient length of time (Doc. #128, ex. 2). Although this policy alone does not result in a conclusion that Defendants were not deliberately indifferent to his medical needs, Plaintiff's evidence alone is insufficient to demonstrate that the mere denial of Interferon resulted in a denial of his constitutional rights. In fact, according to Plaintiff's own evidence, he did not qualify for anti-hepatitis C medication because he had cirrhosis and varices (Doc. #210, ex. A). In sum, Defendants Thompson and Gan were not deliberately indifferent to Plaintiff's medical needs, nor were they negligent in treating him (see infra at 15-18).

**b. Facial Lipoma**

The record also demonstrates that Plaintiff was promptly and appropriately treated for the facial lipoma. On February 20, 2003, surgery was ordered for Plaintiff's facial tumor (Doc. #128, ex. 2, 5). On April 10, 2003, Dr. Gan scheduled Plaintiff for surgical removal of facial lipoma (Id.). On April 16, 2003, Plaintiff underwent surgery to remove the lesion on his forehead (Doc. #210, ex. Q). Plaintiff was also given bacitracin ointment and a follow-up appointment for the next week (Doc. #128, ex. 2, 5). In sum, Plaintiff was properly and appropriately treated for the facial lipoma, and Defendants Thompson and Gan

were not deliberately indifferent to Plaintiff's medical needs, nor were they negligent in treating him (see infra at 15-18).

**3. Remaining Medical Defendants**

As to Plaintiff's medical treatment after January 31, Plaintiff has either failed to set forth sufficient facts as to the remaining medical Defendants, or only alleged a claim under the doctrine of *respondeat superior*. See supra at 11-12. Accordingly, Defendants Weisbuch, Scalzo, Steinhauser, Campbell, Gallardo, Butler, Fream, Brooks, P. Smith, Chaffee and Malta, are also entitled to summary judgment as to Plaintiff's claims of deliberate indifference to his medical needs after January 31, 2003. Further, Defendant Mary Daley, who is named in the caption of Plaintiff's Third Amended Complaint, but not otherwise discussed therein, will be dismissed from this action as there are insufficient facts against her.

**4. Bottom Bunk**

Plaintiff alleged that Defendants Allyn, Saldivar, and Uphold were deliberately indifferent to his medical needs by failing to provide him a bottom bunk. Defendants assert that they were unable to assign Plaintiff a bottom bunk without a medical slip, but did so as soon as possible after he obtained the slip.

According to the record, detention officers may not assign an inmate to a lower bunk lower tier without a medical slip (Doc. #128, exs. 10-12, Doc. #210, exs. O & P). Moreover, even with a medical slip, the inmate may not be immediately moved, but must wait until a bed is available (Doc. #128, ex. 10). However, a detention officer will move an inmate who does not have a medical authorization slip for a lower bunk into a top bunk to make a lower bunk available (Id.). Further, metal ladders are not provided for access to the top bunk because they can be used as a weapon or in a suicide attempt (Doc. #210, exs. O & P).

Defendants Allyn, Saldivar, and Uphold assert that they lacked authority to assign Plaintiff a bottom bunk. However, the lack of a medical slip, regardless of the nature of the Plaintiff's injury or disability, may not excuse a detention officer from providing an inmate a bottom bunk if one is available. According to Plaintiff's affidavit, his leg was clearly

bruised and he could not walk. Defendants' argument that an inmate who is unable to walk, but has not seen medical personnel, must sleep in a top bunk due to the officers' inability to determine where an inmate should sleep is rejected. Moreover, even when Plaintiff obtained a medical slip, he was still forced to use the top bunk for one week. Although Defendants have not produced evidence that demonstrates no bottom bunk was available during the pertinent times, Plaintiff has failed to present any evidence demonstrating that he suffered an injury as a result of the alleged failure to provide him a bottom bunk. See Rizzo v. Goode, 423 U.S. 362, 371-72, 377 (1976) (to state a valid constitutional claim or state law claim of medical malpractice, a plaintiff must demonstrate that the defendants' actions resulted in an injury). Defendants Allyn, Saldivar, and Uphold are thus entitled to summary judgment on Plaintiff's claim that he was denied a bottom bunk.[5]

**5. Funding**

Plaintiff argues that his medical needs were disregarded due to lack of funding. However, Plaintiff has only demonstrated that there is a genuine dispute of fact as to whether seven individuals ignored his medical needs for approximately 48 days. Plaintiff has not demonstrated that there is a genuine dispute of material fact as to whether this was the result of a policy, practice, or custom, or the lack of funds. In fact, Defendants have established that it is the policy of the medical staff to report any serious medical need to the proper medical personnel. According to the record, there is a disputed issue of fact as to whether this was done in Plaintiff's case. Supra at 9-10. Plaintiff has presented no evidence, however, that any alleged disregard of his medical needs was the result of a funding issue, rather than individual actions. Thus, Plaintiff's claim regarding funding, and Defendants Maricopa County, Wilson, Brock, Stapley, Kunasek, Wilcox, David Smith, Wilson, Arpaio, Hendershott, Sheridan, Haggard, and CHS, will be dismissed.

---

[5] Plaintiff does not appear to be pursuing this claim against the medical staff. Even if he were, the medical staff would be entitled to summary judgment because as soon as he was examined, Defendant Thompson prescribed a bottom bunk for Plaintiff.

**6. Failure to Transfer Records**

As previously explained, in Case No.03-1584-PHX-SMM (VAM), Plaintiff alleged that Defendants Arpaio, Haggard, CHS, Scalzo, Steinhauser, Gan, Thompson, Gallardo, and Dr. Jose Urdaneta were deliberately indifferent to his medical needs by failing to transfer his paperwork to ADOC. Plaintiff alleged that as a result of such failure to forward the records, he had to start all over again with tests and treatment (Id.).

After Defendants filed a Motion for Summary Judgment in Case No.(Doc. #128), this Court consolidated cases 03-0374-PHX-SMM (VAM) and 03-1584-PHX-SMM (VAM). In response to a motion filed by Plaintiff, Defendants argued that its Motion for Summary Judgment "relates to both cause numbers as consolidated," because the thrust of their motion is that Plaintiff "has failed to establish a civil rights violation." (Doc. #232.) Due to the chronology of the consolidation of this case, the Court disagrees with Defendants. Accordingly, summary judgment may not be granted on this claim. However, both Plaintiff and Defendant will have sixty days from the filing of this Order to file a motion for summary judgment, addressing this claim or any other surviving claim, should they choose to do so. The non-moving party will then have sixty days to respond to any such motion.

**D. State Medical Malpractice Claim**

Plaintiff alleges that Defendants Brooks, Smith, Chaffee, and Malta have committed state medical malpractice against him. (Doc. 129 at 5.)[6] Specifically, Plaintiff alleges that "these defendants knew plaintiff had very serious medical problems yet they failed to take the proper steps to see that plaintiff received medical care which met minimal professional standards, including but not limited to: Lack of care for a fatal liver disease; Lack of care for a serious knee injury; Failure to treat plaintiff in a timely manner; and Delays in treating

---

[6] Based on the Court's conclusions in Part C(2) and C(3), Plaintiff's medical malpractice claim is limited to the medical care he received before January 31, 2003 from Chaffee, Malta, Brooks, and Smith. See supra at 11-13 (finding that Gan and Thompson provided timely and proper medical care after January 31, 2003; finding insufficient evidence and respondeat superior claims against Defendants Scalzo, Steinhauser, Gallardo, Brooks, P. Smith, Chaffee and Malta for post January 31, 2003 care).

plaintiff which caused him great harm." (Id.) Plaintiff further alleges the injuries he suffered as a result of Defendants' medical malpractice include, "Failure to properly treat plaintiff for serious, very painful medical problems including a fatal disease; Permanent knee injury; Extreme, prolonged pain; Mental and emotional anguish." (Id.)

In Arizona, a medical malpractice cause of action "means an action for injury or death against a licensed health care provider based upon such provider's alleged negligence, misconduct, errors or omissions, or breach of contract in the rendering of health care, medical services, nursing services or other health-related services." Ariz. Rev. Stat. § 12-561. Arizona Revised Statutes § 12-563 governs the plaintiff's burden of proof in medical malpractice actions. Both of the following elements of proof are required to demonstrate that an injury resulted from the failure of a health care provider to follow the accepted standard of care: (1) The health care provider failed to exercise that degree of care, skill and learning expected of a reasonable, prudent health care provider in the profession or class; and (2) Such failure was a proximate cause of the injury. Id. § 12-563. Whether a physician breaches a duty by falling below the accepted standard of care and whether such failure was the proximate cause of the injury is ordinarily shown by expert medical testimony. See Peacock v. Samaritan Health Serv., 765 P.2d 525, 528 (Ariz. Ct. App. 1988); Gregg v. Nat'l Medical Health Care Services, Inc., 699 P.2d 925, 928 (Ariz. Ct. App. 1985). Several Arizona cases have held that a plaintiff faced with a motion for summary judgment must show that this expert testimony will be available at trial. Riedisser v. Nelson, 534 P.2d 1052, 1054 (Ariz. 1975); Morrell v. St. Luke's Medical Center, 556 P.2d 334, 335-36 (Ariz. Ct. App. 1976); Abernethy v. Smith, 498 P.2d 175, 181 (Ariz. Ct. App. 1972).

In support of their motion for summary judgment, Defendants have not attempted to argue or demonstrate that the actions of Brooks, Smith, Chaffee, or Malta fell within the requisite standard of care, or that any failure was not the proximate cause of Plaintiff's alleged injuries. Instead, they assert only that Plaintiff's claim fails because he has not shown that he could produce an expert witness who would testify that these four Defendants' treatment of Plaintiff fell below the applicable standard of care and proximately caused his

injuries. (Doc. 128 at 9.) Neither Defendants nor Plaintiff have specifically addressed the legal issue of the necessity of expert testimony. Defendants merely challenged Plaintiff to come up with it, and Plaintiff has tacitly conceded its necessity. See Doc. #230 at 4. Although the general rule is that negligence in the form of medical malpractice must be established by expert medical testimony, "it is well recognized that expert testimony is not required where the resolution of the question to be determined does not require special and technical knowledge of the medical profession, and is so grossly apparent that the average layman would have no difficulty in recognizing it." Kleinman v. Armour, 470 P.2d 703, 704 (Ariz. Ct. App. 1970) (citations omitted).

As noted above, Plaintiff's medical malpractice claim is potentially viable against Defendants Brooks, Smith, Chaffee, and Malta for the 48-day-period between December 14, 2002, and January 31, 2003 only. The affidavits of Defendants Chaffee, Malta, Brooks, and Smith set forth the parameters of their duties as Medical Assistants and Licensed Practical Nurses, respectively, (Doc. #128, exs. 3, 4, 13, 14), such that expert testimony is not required to determine whether their treatment of Plaintiff fell below the applicable standard of care and it "is grossly apparent that the average layman would have no difficulty in recognizing it." Kleinman, 470 P.2d at 704. Thus, the Court finds that no expert testimony is required on the issue of whether such Defendants breached the standard of care applicable to Plaintiff. See Revels v. Pohle, 418 P.2d 364 (Ariz. 1966) (no expert testimony necessary where defendant physician alleged to have completely disregarded plaintiff's continual complaints of post-operative pain without any examination in any manner over several months).

With respect to demonstrating that any breach of duty was the proximate cause of Plaintiff's injuries, however, expert testimony will be required. See Gregg, 699 P.2d at 928 (upholding summary judgment for hospital because expert medical opinion that hospital substandard for not adopting certain rules failed to state that this failure proximately caused patient's death). Plaintiff alleges that the injuries he suffered as a result of Defendants' medical malpractice include, "Failure to properly treat plaintiff for serious, very painful medical problems including a fatal disease; Permanent knee injury; Extreme, prolonged pain;

Mental and emotional anguish." (Id.) Whether any of these injuries was proximately caused by Defendants' alleged failure to take proper steps to see that Plaintiff received medical care which met minimal professional standards from December 14, 2002 to January 30, 2003 requires special and technical knowledge of the medical profession, and is not so grossly apparent that the average layman would have no difficulty in recognizing it. Kleinman, 470 P.2d at 704. Because expert testimony is necessary to litigate this claim against Defendants Chaffee, Malta, Brooks, and Smith, and Plaintiff has presented no expert testimony on this issue, summary judgment in favor of Defendants will be granted on Plaintiff's medical malpractice claim.

**IV. Pending Motions**

Plaintiff filed a Motion for Leave to File Amended Response and to Stay Ruling on the Motion for Summary Judgment (Doc. #230). With respect to each of the claims discussed above, the Motion for Summary Judgment is ready for adjudication, and Plaintiff's attempt to supplement the record or amend his response to Defendants' Motion for Summary Judgment, does not change the result. Similarly, Plaintiff originally filed this action on February 25, 2003. Thus, he has had in excess of 42 months to obtain a medical expert in support of his medical malpractice claim. Accordingly, Plaintiff's motion will be denied. (Doc. #230.)

On July 24, 2006, Plaintiff filed a Motion for Extension of Time to File a Motion to Compel Discovery (Doc. #231). Plaintiff's case has been pending for more than three years, in large part due to delays he caused. Plaintiff previously sought a discovery extension, which was denied. Plaintiff was previously ordered to file a motion to compel by June 30, 2006, which he failed to do, instead merely seeking an extension (Docs. ##207, 218). Finally, Plaintiff has not demonstrated that any additional evidence which he would obtain through discovery is necessary to the claims remaining in his action. Accordingly, Plaintiff's Motion for Extension of Time to File a Motion to Compel Discovery will be denied.

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED** (Dkt. 128) in the following respects:

(1) Plaintiff's claims regarding funding are **dismissed with prejudice**, and Defendants Maricopa County, Sandi Wilson, Fulton Brock, Don Stapley, Andrew Kunasek, Mary Rose Wilcox, David Smith, Max Wilson, David Hendershott, Jerry Sheridan, and Mary Daley are **dismissed with prejudice**.

(2) Plaintiff's claims regarding medical treatment received after January 31, 2003, are **dismissed with prejudice**, and Defendants Dr. Weisbuch and Trista Campbell are **dismissed with prejudice**.

(3) Plaintiff's claims regarding the delay in medical treatment between December 14 and January 31 against Defendants Diane Butler and Lechtie Fream are **dismissed with prejudice**, and Defendants Diane Butler and Lechtie Fream are **dismissed with prejudice**.

(4) Plaintiff's medical malpractice claim is **dismissed with prejudice**.

(5) Plaintiff's Claims against Defendants Allyn, Saldivar, and Uphold, regarding bunk assignment are **dismissed with prejudice**.

**IT IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment is **DENIED** (Dkt. 128) in the following respects:

(1) Plaintiff's claims regarding the delay in medical treatment between December 14 and January 31 against Defendants Donald J. Chaffee, Christine Malta, Pamela Brooks, and Pinkey Smith **will proceed**.

(2) Plaintiff's claims regarding the delay in medical treatment between December 14 and January 31 against Defendants A.R. Allyn, Manuel Saldivar, and D.D. Uphold **will proceed**.

**IT IS FURTHER ORDERED** that the reference to the Magistrate Judge is withdrawn as to Plaintiff's Motion for Leave to File Amended Response and to Stay Ruling (Doc. #230) and Motion for Extension of Time to File a Motion to Compel Discovery (Doc. #231).

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Amended Response and to Stay Ruling (Doc. #230), and Motion for Extension of Time to File a Motion to Compel Discovery (Doc. #231) are **denied**.

**IT IS FURTHER ORDERED** that, with respect to Plaintiff's deliberate indifference claim relating to the transfer of his medical records from the jail, filed against Defendants Arpaio, Haggard, CHS, Scalzo, Steinhauser, Gan, Thompson, Gallardo, and Dr. Jose Urdaneta, both Plaintiff and Defendants shall have sixty days from the entry of this Order to file a motion for summary judgment addressing this particular claim or any other surviving claim, should they choose to do so.

**IT IS FURTHER ORDERED** that, if Plaintiff or Defendants file a motion for summary judgment, the non-moving party shall have sixty days to respond to any such motion.

DATED this 27th day of September, 2006.

Stephen M. McNamee
United States District Judge